IN THE MATTER OF THE APPEAL OF DRAIN FROM ORDER OF STATE PERSONNEL BOARD OF REVIEW AFFIRMING ORDER REMOVING HIM FROM HIS EMPLOYMENT WITH THE OHIO DEPT. OF LIQUOR CONTROL.

(No. 3583—Decided December 17, 1970.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman*, for appellee.

*Mr. Paul W. Brown*, Attorney General, and *Mr. B. William Dunlap*, for appellant.

CRAWFORD, J. Robert Drain was removed from service with the Ohio Department of Liquor Control, and appealed to the State Personnel Board of Review, which sustained his removal. Upon appeal to the Court of Common Pleas, the court reversed the order of the board and ordered that Drain be returned to his position of Retail Store Clerk II with the Ohio Department of Liquor Control with full back pay, less any wages he may or could have earned since his removal.

The director of the Department of Liquor Control has now appealed from that judgment to this court under R. C. 119.12 and R. C. 143.27, on questions of law.

Drain had been assistant manager at state liquor store

no. 61 in Dayton, Ohio for some time prior to October 15, 1968, until February 9, 1969, when he became a Retail Store Clerk II in store no. 68. A department audit from October 15, 1968 to February 15, 1969 revealed a shortage of $1,422 at store no. 61. Under the department's interpretation of its regulations, Drain was deemed to be responsible for the shortage and he and the manager were each assessed one-half of the amount. The manager paid his half and was retained in service. Drain refused to pay.

The department filed a claim against The Buckeye Union Insurance Co. which had issued a blanket policy covering all employees of the department and bound itself to pay losses attributable to unidentifiable employees. The employee or employees, if any, responsible for the shortage have not been identified. Drain was not accused nor even suspected of any personal blame.

It was merely a departmental policy that managers (and perhaps assistant managers) of stores were held responsible for shortages appearing in their stores. The director filed a claim with the insurance company against Drain. The insurance company paid the claim and sought to collect from Drain. Upon his refusal, his bond was cancelled by the insurance company and a renewal of the bond was denied.

Drain was removed by the director upon the technical ground, called nonfeasance, that he had not provided bond as required by the regulations.

The State Personnel Board of Review ordered removal upon the sole ground that, as it advised appellant, "The Buckeye Union Insurance has terminated its liability under Public Employees Blanket Bond No. 140434, in the name of the State of Ohio as Obligee and in the name of the Department of Liquor Control as the insured, for any act committed by you as an employee of the Department of Liquor Control."

Whatever authority the director has for requiring a bond of employees of the department must depend upon R. C. 4301.08. That section requires, in part, that each member of the Liquor Control Commission and the director of

liquor control "shall give bond to the state in specified amounts conditioned according to law with surety to the approval of the Governor."

The section continues: "The director may require any employee of the department of liquor control to give like bond in such amount as the commission prescribes, with surety etc."

Limited by that language, the director may require a reasonable fidelity or faithful performance bond, but not an absolute insurance policy from the employee. An employee cannot be made absolutely responsible for the faithful performance of others. If he is a manager or assistant manager, he can only be required faithfully to manage, not to guarantee the fidelity of others whom he has not selected and whom he cannot discharge.

We hold, therefore, as did the Court of Common Pleas, that in requiring Drain to bind himself to make up any shortages in which he had no part, the director exceeded his authority and acted arbitrarily. Drain, therefore, is not liable and his refusal to pay cannot be cause for his removal.

Technically, he was removed for being no longer bonded. The reason he was no longer bonded was that the director, by his own arbitrary and unlawful act, set in motion the train of events which led to the termination of Drain's coverage by the insurance company.

We should be interested to know whether the "like bond" covering Drain and the other employees was in the same form as those of the director and the members of the commission. If not, it was not a like bond; if so. why should not the director himself or the members of the commission be required to make up the shortage? In either case, endeavoring to place the liability upon Drain was arbitrary, unreasonable and unlawful.

The chairman of the State Board of Personnel Review expressed doubt that that board could reinstate an unbonded employee. We have seen from R. C. 4301.08 that the giving of a bond by such an employee is not an absolute requirement of the law. The director *may* require a fidelity

bond, but he need not do so. If he chooses to make the requirement, then his act must be reasonable and performed in a reasonable manner. If it is not, then the employee's failure to comply with the unreasonable requirement will not constitute any of the grounds of removal upon which alone that board may act. R. C. 143.27.

A bond must be conditioned according to law. *Cusack* v. *McGrain* (1939), 136 Ohio St. 27.

Frequently quoted and introduced in the briefs, is the case of *Weiner* v. *Crouch* (1963), 120 Ohio App. 49. The court in that case held that the manager of a liquor store is not a public officer, accountable regardless of fault or negligence for funds passing through his office. It further held that the director of the Department of Liquor Control abused his discretion in holding the manager of a self-service liquor store responsible for all cash and inventory shortages without proof of guilt or complicity.

The risk may be greater in a store of that type, but the same principle must apply in a store of traditional type. There were some ten regular employees in store no. 61, and a turnover of perhaps five additional during the period of the audit. Furthermore, the audit extended for a few days after Drain had left; and prior to that time he was acting as manager only approximately one-half of the time.

Judge McBride delivered an exhaustive analytical opinion. Our further comment would be repetitious of what he has already well said.

The judgment appealed from will be affirmed.

*Judgment affirmed.*

KERNS, P. J., and SHERER, J., concur.